IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

CLAYTON TRAMMEL                                                                  PETITIONER

VS.                                                        CIVIL ACTION NO 3:13cv868-DPJ-FKB

JACQUELINE BANKS                                                              RESPONDENT

## **REPORT AND RECOMMENDATION**

### **I. INTRODUCTION**

Clayton Trammel, state prisoner, seeks federal habeas relief pursuant to 28 U.S.C. § 2254. Having considered the petition, response, and the state court record, the undersigned recommends that habeas relief be denied.

### **II. FACTS AND EVIDENCE AT TRIAL**

On the evening of April 24, 2007, Angela Cassidy Hamilton[1] was working behind the customer service window at the Piggly Wiggly grocery store in Vicksburg Mississippi. Around 8:30 p.m., a man walked up to the window and handed her a note. The note stated as follows: "Put all the money in the bag. Now! I have a gun. I will use it. Don't make a sound." The perpetrator never displayed a weapon, but he kept his right hand in his pocket. When Hamilton had given him the money, he ran out of the store. A second man, whom Hamilton had assumed was merely a customer, ran out behind the robber.

Trammel was indicted along with two juveniles, Arthur Andrews and Carl Rumbley,

---

[1] Between the time of the robbery and trial, Angela Cassidy married and changed her name to Angela Hamilton. She is referred to as Angela Hamilton throughout the remainder of this opinion.

of armed robbery (count one).  Additionally, Trammel was indicted on two counts of directing a child to commit a felony (counts two and three).  Trammel's case was severed from the cases for Andrews and Rumbley and tried in November of 2008.

Sgt. Sandra Williams with the Vicksburg Police Department and Lt. Billy Brown of the Warren County Sheriff's Department testified concerning their investigation of the robbery.  In the course of that investigation, they identified and interviewed two juveniles, Arthur Andrews and Carl Rumbley, who were involved in the crime.  Based upon information from the juveniles, they developed Clayton Trammel as a suspect.  A search warrant was obtained for his residence, and that search yielded a handgun.  As a part of the investigation, Sgt. Williams prepared a six-photo lineup and presented it to Hamilton and to Doyle Froman, the store manager.   Hamilton identified Trammel as the robber.  Froman, who had been in another part of the customer service area at the time of the robbery, identified another individual.

Arthur Andrews testified for the state at trial.  According to Andrews, Trammel told him he needed money to get his car out of the shop and that he had been scoping out the Piggly Wiggly, which had no security cameras.   Trammel asked Andrews and Rumbley if they wanted to help him, and they agreed.  Andrews called the police before the robbery and reported a shooting in another part of town to create a diversion.  He then accompanied Trammel into the store.  Rumbley remained outside the store.  Andrews received $1600 cash for his participation in the robbery.

Also testifying for the state was Robbie Stauts, the owner of an auto repair shop in Vicksburg.  According to Stauts, Trammel brought his car in for repairs in February of

2

2007, and the repairs were completed approximately a week later.  At the end of March, the car was still at the shop, awaiting pickup and payment by Trammel.  At that time, Stauts sent Trammel a notice that the vehicle would be considered abandoned and would be sold if not picked up.  Trammel paid the balance due on the vehicle and picked it up on April 25, 2007.

At the close of the state's case, the court granted a directed verdict on counts two and three.  Trammel did not take the stand and called no witnesses.

The jury convicted Trammel of armed robbery, and the court sentenced him to a term of 20 years.  The Mississippi Court of Appeals affirmed his conviction and sentence. *Trammell v. State*, 62 So. 3d 424 (Miss. 2011).[2]  Trammel did not seek a writ of certiorari to the Mississippi Supreme Court.  He filed an application to proceed in the trial court with a motion for post-conviction relief; that application was denied.

### III.  GROUNDS ASSERTED AND STANDARD OF REVIEW

Trammel seeks a writ of habeas corpus based upon the following grounds:[3]

1. The trial court denied Trammel due process in failing to grant his motion to suppress the gun found in the search of his home.

2. The trial court was misled by the state's instructions and erred in denying Trammel's proposed jury instructions.

3. Petitioner was denied due process by the trial court's denial of the motion to suppress evidence seized pursuant to the search warrant.

4. The evidence was insufficient to support the conviction.

5. The following acts or omissions by his trial counsel constituted ineffective

---

[2] Petitioner's last name is spelled "Trammell" throughout the state court record.

[3] Some of Trammel's grounds for relief have been restated for clarity.

3

assistance:

    A.    Failing to file a motion to suppress evidence seized pursuant to a search warrant that was based upon false factual allegations and not supported by probable cause.

    B.    Failing to file a motion to dismiss the indictment.

    C.    Failing to object to inconsistent and inflammatory testimony by Angela Hamilton.

    D.    Failing to request an instruction regarding inconsistent statements by witnesses.

    E.    Failing to object to Billy Brown's testimony concerning Trammel's prior bad acts or to the admission of the gun.

    F.    Failing to impeach Andrews and allowing him to give inconsistent testimony.

    G.    Failing to request a jury instruction on Andrews's inconsistent statements.

    H.    Failing to offer Andrews's statement into evidence.

6. Trammel was denied due process by the trial court's failure to grant a new trial.

7. Trammel was denied due process by the cumulative effect of the trial court's errors and by ineffective assistance of counsel.

8. He was denied effective assistance of counsel based upon the following:

    A.    Trial counsel failed to call alibi witnesses.

    B.    Trial counsel failed to introduce the defective search warrant and affidavit into evidence.

    C.    Trial counsel failed to challenge the competency of Andrews.

    D.    Trial counsel failed to present evidence to establish that Trammel had not had constructive possession of the gun.

9.  Trammel's sentence was unconstitutional in that it exceeded his life expectancy and a life sentence was not authorized by the jury.

### III.  ANALYSIS

### A.  Procedurally-barred Claims

Grounds 1, 2, 3, 4, 6, 7, 8A, 8B, 8D, and 9 have never been presented to Mississippi's highest court.[4] Moreover, Trammel no longer has any avenue available by which to pursue these claims in state court:  He has completed both the direct review process and the post-conviction relief process, and none of these claims falls into any exception to the prohibition set forth in Miss. Code Ann. § 99-39-27(9) on the filing of successive petitions for post-conviction relief.  Thus, Trammel has technically exhausted his state court remedies on these claims, and because they would now be procedurally barred in state court, this court may not review their merits.  *See Sones v. Hargett,* 61 F.3d 410, 416 (1995).

### B.  Claims Adjudicated on the Merits

The remaining grounds for relief, all of which allege ineffective assistance of counsel, were rejected on the merits by the Mississippi Supreme Court in Trammel's application for post-conviction relief.  They are therefore subject to the highly deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254(d), which allows habeas relief in this case only if the state court's rejection of Trammel's claims involved "an unreasonable application of . . . clearly

---

[4]These claims were raised in Trammel's direct appeal; however, because Trammel failed to seek a writ of certiorari, they were never presented to the state supreme court.  He did not include them in his application for post-conviction relief.

5

established Federal law . . . as determined by the Supreme Court of the United States" or "an unreasonable determination of the facts" in light of the evidence presented to the state court. *Id.* The Supreme Court has repeatedly emphasized that " 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 410 (2000)). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, the application must be not only incorrect but also "objectively unreasonable." *Id.* at 409.

Review of ineffective assistance claims is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Analysis of them begins with the well-known test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland's* two-prong analysis, a petitioner must first show that his attorney's performance was deficient. *Id.* at 688. "Deficient" means that counsel's performance was "outside the wide range of professionally competent assistance." *Id.* at 690. If a petitioner succeeds in establishing this first prong, he must go on to demonstrate that his attorney's deficient performance prejudiced the defense such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The standard of review of an attorney's performance is "highly deferential," and a court considering an ineffectiveness claim is to "indulge a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance." *Id.* at 689.

The difficulty faced by a habeas petitioner in seeking to establish a claim of

ineffective assistance is compounded when the claim is viewed through the lens of § 2254(d). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland'*s deferential standard." *Harrington v. Richter,* 131 S.Ct. 770, 788 (2011). In short, a habeas petitioner's burden of overcoming AEDPA's deferential standard of review is an extremely difficult one. That burden only increases where a petitioner is asserting ineffective assistance claims.

## IV.  ANALYSIS OF CLAIMS

*Admission of gun into evidence (Grounds 5A and 5E).* The warrant for the search of Trammel's home included clothing, money, and checks as items to be searched for and seized; it did not identify a gun as a subject of the search. While executing the search warrant, Lt. Brown opened the door of a coat closet off of the living room and noticed some clothing lying on the top shelf. When the officer moved the clothing, he discovered the gun underneath them.

Defense counsel filed a pretrial motion to suppress, arguing that the gun had not been in plain view and therefore should not have been seized. After hearing testimony from Lt. Brown and Officer Jeff Merritt concerning the execution of the warrant and the discovery of the gun, the court concluded that the search warrant was supported by probable cause and that the gun had been lawfully seized as a part of the search, as it had been discovered by an officer while he was looking in an area where items identified in the warrant could have been hidden. Trammel contends that his attorney's efforts in this regard were deficient. However, he has not identified any additional valid bases upon

7

which this evidence could have been challenged.

Trammel also takes the position that his attorney should have argued that the gun was inadmissible because it had no nexus to the crime. This argument would likely have been futile: The fact that Trammel told Hamilton that he was carrying a gun during the robbery was arguably sufficient to render relevant the finding of a gun in Trammel's home.

In short, Trammel has not raised a sufficient issue of either deficient performance or prejudice on these *Strickland* claims to merit relief, in that there is a reasonable argument that his attorney's performance was not deficient and that, in any event, he was not prejudiced by any such alleged deficiency. The state court's rejection of these claims may not be disturbed by this court.

*Indictment (Ground 5B).* Trammel contends that his indictment was defective because it failed to explicitly charge that he exhibited a deadly weapon and that his attorney should have sought dismissal on this basis. The statute under which Trammel was charged provides as follows:

> Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery . . . .

Miss. Code Ann. § 97-3-79. Count one of the indictment charged that Trammel

> did willfully, unlawfully and feloniously take cash money the personal property of Piggly Wiggly grocery store from the person of or from the presence of Angela Cassidy against his/her will by violence to his/her person, or by putting him/her in fear of immediate injury by use of a written note stating that he was armed with a gun, in violation of Miss. Code 1972 Ann. Sec. 97-3-79, contrary to the statute in such cases made and provided, against the peace and dignity of the state of Mississippi.

[8-2] at 6. Trammel is correct that the statute includes the phrase "exhibition of a deadly

8

weapon" and that his indictment did not include it.  However, the Mississippi Supreme Court has interpreted the statute as not requiring that the victim actually see a deadly weapon.  Rather, it is sufficient that the defendant make an overt act such that a reasonable person would believe that he is wielding a deadly weapon:

> We find that when a defendant makes an overt act and a reasonable person would believe that a deadly weapon is present, there is no requirement that a victim must actually see the deadly weapon in order to convict pursuant to Miss. Code Ann. § 97-3-79.  Therefore, a victim is not required to have "definite knowledge" of a deadly weapon in the sense that the weapon must actually be seen by the victim's own eyes.

*Dambrell v. State*, 903 So. 2d 681, 683 (Miss. 2005).  Thus, under Mississippi law, committing an overt act such that a reasonable person would believe a deadly weapon is present is the equivalent of exhibiting a deadly weapon.  This interpretation of the statute by the state courts provides a reasonable argument that failure to challenge Trammel's indictment did not constitute deficient performance because such a challenge would have been futile.   Habeas relief is not available on this claim of ineffective assistance.

*Testimony of Angela Hamilton  (Grounds 5C and 5D)*.  On direct examination, Angela Hamilton did not mention that the robber had been wearing a hood.  When defense counsel pointed out during cross-examination that she had mentioned a hood in her statement to authorities, Hamilton responded that she did not recall the hood.  Nevertheless, throughout her testimony she was adamant that she got a good look at the robber's face and that she recognized him as a regular customer.  She also made an in-court identification of Trammel as the robber.

Trammel contends that his attorney should have lodged an objection to Hamilton's testimony.  However, he has identified no basis under the law upon which an objection

9

could or should have been made. Furthermore, defense counsel aggressively cross-examined Hamilton regarding her identification of Trammel. The Mississippi court's rejection of this claim was objectively reasonable. No relief is warranted.

Trammel also argues that Hamilton's inconsistency regarding the hood created a duty on the part of his attorney to offer a jury instruction regarding the inconsistency. Under Mississippi law, a defendant is entitled to an instruction concerning the credibility of a witness where the witness's testimony has been impeached by a previous inconsistent statement. *E.g., Swann v. State*, 806 So. 2d 1111, 1116 (Miss. 2002); *Ferrill v. State*, 643 So. 2d 501, 504-05 (Miss. 1994); *McGee v. State*, 608 So. 2d 1129, 1134-35 (Miss. 1992); *Wright v. Mississippi*, 797 So. 2d 1028, 1031 (Miss. Ct. App. 2001). It is questionable, however, whether the trial court would have considered this an appropriate case for the instruction, given the fact that Hamilton never affirmatively denied that the robber was wearing a hood, but merely stated that she did not remember the hood. Thus, there is an arguable reason for a finding that Trammel's attorney's performance was not deficient. Moreover, the state court could reasonably have concluded that even if defense counsel's performance was deficient, the result of the trial would have been the same had the instruction been given. In short, Trammel cannot establish that there is no reasonable argument that his attorney rendered effective assistance in failing to request the instruction.

Hamilton testified that she quit her job of four years duration at the Piggly Wiggly after the robbery because the experience frightened her. Trammel characterizes this testimony as "inflammatory" and argues that his attorney should have objected.

Hamilton's testimony was a factual statement, and any objection would likely have been futile. Again, the state court could reasonably have concluded that Trammel had shown neither deficient performance nor prejudice, as required by Strickland. This claim is without merit.

*Evidence of prior bad acts (5E).* Lt. Brown testified that Andrews and Rumbley knew Trammel by the name of Clay Banks. The following exchange occurred during defense counsel's cross-examination of Lt. Brown on the matter of how he determined that Clay Banks and Clayton Trammel were the same person:

> Q: How did you determine that this Clay Banks that they were referring to would have been Mr. Trammell?
>
> A. Well, whenever we are working a crime such as this, myself and Sergeant Williams, we would confer with other investigators. And from speaking with them about prior incidences [sic], we were able to determine that Clay Banks was Clay Trammell.
>
> Q. And how were you able to determine that?
>
> A. Speaking with Investigator, or sergeant at the time, Tom Wilson. From a prior case that he had, we were able to determine that Clay Banks was Clay Trammell.
>
> Q. From a prior case that Mr. Wilson had?
>
> A. Yes, ma'am.
>
> Q. And was this person - this prior case referring to Clay Banks as Clayton Trammell?
>
> A. Yes, ma'am.

[8-4] at 76.

Trammel argues that his attorney should have objected to this testimony.

11

Obviously, Trammel's attorney could not have objected, as the testimony was elicited by her. Furthermore, the testimony did not directly implicate Trammel in any crimes or bad acts. Defense counsel could have concluded that asking that the statement be stricken and the jury directed to disregard it would have simply called it to the jury's attention and confirmed that Trammel had a criminal history. In considering this claim, the state supreme court could reasonably have concluded that defense counsel's performance was not deficient, that the result of the trial would not have been different had this testimony not been heard by the jury, or both. Because the state court's application of *Strickland* was reasonable, federal relief is precluded.

*Testimony of Andrews (Grounds 5F, 5G, 5H, and 8C).* Several of Trammel's claims of ineffective assistance relate to the testimony of Arthur Andrews. Andrews was 16 years of age at the time of the robbery and 18 at the time of the trial. During the investigation of the robbery, Andrews gave a written statement to authorities. That statement was not introduced into evidence, and there is no copy in the trial court record. Trammel did, however, include with his motion for post-conviction relief a document that appears to be a transcript of Andrews's interview. [8-5] at 52-66. That document and the questions posed on cross-examination indicate that in that statement, Andrews gave the perpetrator's name as Clay Banks. Trammel points out that Andrews's trial testimony was inconsistent with his written statement because on the stand Andrews denied ever having identified the robber as Clay Banks. Trammel argues that his attorney rendered ineffective assistance by failing to impeach Andrews on this point with his written statement.

12

Andrews's testimony was not a model of clarity, precision, or consistency. He became confused at times by defense counsel's questions on cross-examination, and his answers were likewise confusing. Nevertheless, defense counsel ably cross-examined him on his identification of Trammel as the robber. It is unclear what more, if anything, she could have done or how it would have changed the outcome of the trial. Despite the fact that Andrews was inarticulate, his testimony was substantially consistent with his statement. Andrews testified unequivocally that the defendant at trial was the person to whom he had referred in his written statement, who had recruited him in the plan, and who had robbed the Piggly Wiggly.

The second argument raised by Trammel regarding Andrews's testimony concerns Andrews's denial that he had been offered anything in exchange for his testimony. Andrews testified that he was initially charged along with Trammel, but that his case was sent to youth court. He denied having received any offers or promises that his case would be sent to youth court if he testified against Trammel. Trammel takes the position that the testimony was untrue and that his attorney was ineffective for not impeaching him or objecting to this testimony. However, there is no evidence that Andrews's testimony was false.

Trammel also takes the position that his attorney rendered ineffective assistance in failing to request an instruction that the jury weigh Andrews's previous statement in assessing his credibility. The weakness in this argument is essentially the same weakness pointed out with regard to Hamilton's allegedly inconsistent testimony, that is, it is doubtful that the trial court would have considered this situation an appropriate one

13

under Mississippi law for the giving of such an instruction. And again, the state supreme court, in considering this ineffectiveness claim, could reasonably have concluded that the giving of an impeachment instruction would not have resulted in a different outcome at trial.

Trammel next contends that his attorney rendered ineffective assistance by failing to challenge Andrews's competency. The record indicates that Trammel and Andrews were indicted together, along with Rumbley. Prior to trial, Andrews's attorney moved for a psychiatric examination of Andrews, arguing that Andrews suffered from a brain injury and a history of mental illness that caused him to be unable to cooperate in his defense. However, Trammel's attorney moved for and was granted a severance prior to any ruling on Andrews's motion; thus there is no indication in the record before this court as to whether a psychiatric examination was performed. As stated previously, Andrews was not the most precise of witnesses, and he became confused at times. Indeed, the prosecutor acknowledged in his closing statement that he wished he had a better witness than Andrews. [8-4] at 122. However, there is nothing in the record to indicate that Andrews had an impairment so severe as to create a duty on the part of Trammel's attorney to challenge his competency as a witness.

Finally, Trammel argues that his attorney should have introduced into evidence Andrews's written statement, in order to show the jury that it was inconsistent with his testimony. However, there is nothing in the record to indicate any significant inconsistency between Andrews's written statement and his trial testimony. Thus, it is unclear what would have been gained by the introduction of the statement.

In summary, Trammel has not shown, as is required under AEDPA, that there is no

reasonable argument that his attorney rendered effective performance with regard to Andrews's testimony. For this reason, no relief is warranted on these claims.

## V. CONCLUSION

Trammel has failed to establish that the state court's adjudication of his claims of ineffective assistance was contrary to, or involved an unreasonable application of clearly established Supreme Court law or was based upon an unreasonable determination of the facts. Accordingly, the undersigned recommends that habeas relief be denied and the petition be dismissed with prejudice.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636; Fed. R. Civ. P. 72(b); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 24th day of June, 2015.

/s/ F. Keith Ball
UNITED STATES MAGISTRATE JUDGE